BALL v. BEST.

(Circuit Court, N. D. Illinois. January 9, 1905.)

No. 26,370.

UNFAIR COMPETITION—SIMULATION OF TRADE-NAMES—MAIL-ORDER BUSINESS.
Complainant became the owner of the business and good will of an establishment in New York engaged in supplying clothing for infants and children under the name of "Best & Co., Liliputian Bazaar," which advertised extensively, and had established a large mail-order business throughout the country. Defendant, the son of a former proprietor of the New York business, established a similar business in Chicago; using the name "A. S. Best & Co.," and placing on his sign the words "Liliputian Outfitters," and "Formerly with Best & Co., New York." He also engaged in the mail-order business. Held, that it was the evident purpose

of defendant to obtain the benefit of the advertising and standing of complainant's business, and that complainant was entitled to an injunction restraining defendant from using the name "Best & Co.," with or without prefixes, and also the name "Liliputian" in connection therewith, in competition with his own business. ·

[Ed. Note.—Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.]

In Equity.   Suit to enjoin infringement of trade-name and unfair competition.

Frank F. Reed and E. S. Rogers, for complainant.
Dent & Whitman, for defendant.

KOHLSAAT, District Judge.   This is a final hearing upon complainant's bill to restrain defendant from using the firm style of "Best & Co.," with and without prefixes, of the words "Liliputian" and "Liliputian Outfitters," and of the fancy device of a hat, boot, and small human figures.

Complainant, by various steps, became and was the owner of the good will and business of Best & Co., of New York, and was under that name, together with a nominal partner, running the business of manufacturing and dealing in infants' and young folks' clothing and supplies. Said firm had for years adopted the trade-name "Liliputian Bazaar," and the device of a large hand, with small human figures, as a trade-mark. Defendant's father, Albert Best, was formerly the Best of said New York firm.   Before and after his death, on April 21, 1900, defendant and his brother Ralph W. Best were employed by said firm.   The New York firm made use of its said several trade symbols and words in substantially all of its business transactions, on its signs, letter paper, bill heads, and garments.   Circulating pamphlets were distributed in sets of 20 to 100,000.   Advertisements were carried in the New York City and neighboring newspapers, in various magazines, women's journals, and other papers.   The evidence shows no attempt to advertise locally in Chicago.   A very considerable attempt was made to circularize thoroughly complainant's stock for a number of years.   Some years as much as $70,000 was expended in advertising, whereby a large mail-order business was established; extending, as it is claimed, all over the world, and constituting from 20 to 25 per cent. of its business.   A large amount of capital is embarked in the business.   About July 1, 1900, defendant quit the employ of complainant, of which he was the manager of the boys' department.   On November 9, 1901, said Ralph W. Best also left said firm on account of sickness.   About the same time defendant advised complainant that he was intending to go into said business for himself; that he expected to buy out the firm of M. Schulz & Co., at Chicago.   Complainant says that he then told defendant that he could not use the term "Liliputian Bazaar," as Schulz & Co. had been doing.   It appears that complainant then had a suit pending against Schulz & Co. to restrain the use of that term, and that afterwards, by consent, a decree was entered permanently enjoining Schulz & Co. from using the same, of which defendant then had notice. To this decree little weight should be given.   Defendant then associated his said brother Ralph with himself to the amount of a $1,000 in-

terest, and bought out the Schulz & Co. business, and took the name of A. S. Best & Co. The brother gave no attention to the business. On the sign he caused to be placed under the name the words "Liliputian Outfitters"; then the words "Formerly with Best & Co., New York." The Schulzes then sent out circulars headed, "A. S. Best & Co., Liliputian Outfitters, 107 State Street," saying that "they desired to announce that the sons of Albert Best, the founder of Best & Co., Liliputian Bazaar, New York, who had long been associated with that house, had purchased their business, and would increase the stock of children's clothing," etc. Later defendant bought out his brother. The use of "Liliputian" was dropped from his catalogue and clothing. Thereafter, until the filing of this suit, defendant continued as aforesaid to conduct said business along the same lines as those followed by complainant. Under these facts, the suit was instituted.

Formerly it would have been assumed, in the absence of most positive proof, that a party might carry on his own business under his own name in Chicago, notwithstanding the fact that parties had established business under the same name in New York, since there could be no presumption that the business interests of the two cities could be so intimate as to extend the good will of such a business as that before the court all the way from New York to Chicago. It is not a light thing to restrain a man from the full benefit of his name, nor would a court of equity consider such a course in any case even now, in the absence of fraud or actual damage. It is apparent in this case that defendant shaped his business and presented the same to the public with the intention of getting the benefit of complainant's standing and business prestige. The only basis upon which a contrary conclusion could be arrived at would be positive evidence to the effect that the two fields of patronage did not conflict. But it is in evidence that complainant is a manufacturer and dealer, and that he does a large mail-order business, as does also defendant. It hardly needs saying that the proficiency of the mails at this date is such that every nook and corner of the nation as well as of Manitoba is as accessible as were places 50 miles away from New York a few years ago. It cannot be otherwise than that the advertising and canvassing of these two rival concerns pass and repass each other innumerable times in their journeys to the centers of trade as well as to the homes of the people—mute contestants for the favor of supplying the wants of each customer. I am clear that under the facts in this case the court must hold that the use of the name of Best & Co. by defendant, even with its present prefix, especially in connection with the word "Liliputian," is a fraud upon complainant's business rights. The action of defendant was deliberate. He both intended to and did trespass upon complainant's rights, and take advantage of his good will and trade. It is not important what definition is placed upon "Liliputian." The name of Best & Co., with the use of that word, constituted complainant's good will. That use was arbitrary, and stands for complainant's goods. The complainant is clearly entitled to the relief prayed for as to the use of the name "Best & Co.," with and without prefixes. He is also entitled to the sole use of the word "Liliputian" in connection with the name Best & Co., with and without prefixes, but only in the line of his business.

I am at a loss to see how the use of a boot, hat, and figure can be said to simulate complainant's large hand and little figures. To my mind, that contention is without merit. I do not deem the other points raised as essential, in view of the above finding.

Complainant may prepare a decree in accordance with the foregoing.