[No. 7494.   Decided January 5, 1909.]

W. MARTELL et al., *Appellants*, v. ST. FRANCIS HOTEL COMPANY, *Respondent*.[1]

TRADE NAMES—INJUNCTIONS—ENJOINING USE OF NAME FOR HOTEL. The keepers of a small hotel used principally as a rooming house by the week, called the Hotel St. Francis, are entitled to an injunction preventing the use of the same name for a large hotel catering principally to transients by the day, where it appears that the two hotels are in the same locality, both competing for transient trade, and that confusion results from the use of the same name; and it is immaterial that the defendant when it adopted the name had no knowledge of the prior use thereof by the plaintiffs and had no intent to deceive or defraud, or that it is more inconvenienced by the confusion than the plaintiffs, or the public.

[1]Reported in 98 Pac. 1116.

SAME—DEFENSES.   In such a case, it is no defense that the plaintiff purchased their hotel and its good will pending the litigation, when all prior damages were waived.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 14, 1908, upon findings in favor of the defendant, after a trial before the court without a jury, dismissing an action for an injunction. Reversed.

*Buck & Boddy*, for appellants.

*G. E. Steiner*, for respondent.

Mount, J.—This action was brought to restrain the respondent from using the name "St. Francis" for his hotel, and for damages. The cause was tried to the court without a jury. Before the trial it appeared that the appellants had purchased the interest of the original plaintiffs, and the appellants were therefore substituted as plaintiffs. At the trial the substituted plaintiffs waived all damages prior to their purchase. Thereafter the evidence was all submitted, the court made findings of fact, and dismissed the action. The plaintiffs appeal.

The facts as found by the trial court are as follows:

"(1)   That on or about the 20th day of May, 1907, the plaintiffs herein purchased from F. A. Lane the lease, furniture, furnishings and good will complete of the Hotel St. Francis, situated at No. 816, Union street, Seattle, and ever since have been and now are conducting said Hotel St. Francis; that said F. A. Lane purchased said Hotel St. Francis complete from his predecessors on or about the 11th day of July, 1906, and continued to run said hotel from the time he purchased the same until he sold it to the plaintiffs herein; that the predecessors of F. A. Lane established said Hotel St. Francis on or about one year prior to its purchase by said Lane; that said Hotel St. Francis is a wooden structure of forty-eight rooms having in connection therewith a dining room; that the patronage of the plaintiffs' hotel is principally such as secure accommodations by the week, or month, or for

longer periods, and is such a hostelry as is commonly known as a rooming house or boarding house and does not make a specialty of transient trade; that the lowest price charged for rooms at plaintiffs' hotel is $3.50 per week.

"(2)  That the defendant is a corporation organized and existing under and by virtue of the laws of the state of Washington.

"(3)  That on or about the 1st day of January, 1907, one H. E. Kennedy and a partner, one Stuart Johnson, established a hotel on the corner of Ninth avenue and Madison St. in the city of Seattle and selected for the name of said hotel the name St. Francis; that about the same time said Kennedy and Johnson filed articles of incorporation of the St. Francis Hotel Co., which incorporation was formed for the purpose of taking over said hotel.

"(4)  That on or about the first day of February, 1907, one W. F. Kennedy purchased the interest of said Johnson in said hotel property and said corporation; that said H. E. Kennedy and said W. F. Kennedy thereafter subscribed for the entire capital stock of the St. Francis Hotel Company, and conveyed to said corporation the said St. Francis hotel.

"(5)  That the defendant corporation has ever since been conducting said hotel under the name St. Francis; that at the time of forming said corporation and establishing said hotel and for two or three months after said hotel was in operation, neither said W. F. Kennedy nor his partner nor any one connected with said hotel or corporation had ever heard of the plaintiffs' hotel St. Francis, or of any other hotel of the same name in the city of Seattle; that the defendant's hotel is located in a building of brick and cement construction of one hundred and seventy-eight rooms having commodious dining room attachment, private baths, telephone exchange, billiard room and barber shop, and is in every respect equipped and operated as a modern transient hotel in the equipment of which defendants have expended $45,000; that the prices charged for accommodations at the defendant's hotel are from $2.50 to $4.50 per day; that in forming said corporation and establishing said hotel the defendant corporation and the individuals forming said corporation were guilty of no fraud whatever toward the plaintiffs, never having heard of plaintiffs' hotel, nor did they, nor have they at any time or in any manner attempted to attract to themselves the plain-

tiffs' patronage or good name, or to advertise their hotel as
the plaintiffs' hotel, or to mislead the public into the belief
that their hotel was the plaintiffs' hotel.

"(6)   That soon after the establishment of the defendant's
hotel the plaintiffs' predecessors began to receive many tele-
phone calls intended for the defendant's hotel; that the plain-
tiffs continued to be and are yet the recipients of many tele-
phone calls daily intended for the defendant's hotel; that dur-
ing said. Lane's ownership of the plaintiffs' hotel a consign-
ment of groceries intended for the defendant's hotel were de-
livered to the plaintiffs' hotel and afterwards forwarded
to defendant's hotel; that two or three times per week
trunks intended for the defendant's hotel were delivered to
the plaintiffs' hotel; that upon one occasion a call for a doctor
for a guest at plaintiffs' hotel became confused and the doctor
was delayed about two hours in answering said call; that in
order for the plaintiffs to secure prompt delivery of supplies,
baggage, etc., at the hotel, or to secure prompt response to
calls to the hotel and to prevent confusion, it is necessary
for the plaintiffs to add to the name of the hotel in orders-for
supplies, calls, etc., the street number of plaintiffs' hotel; that
by adding such street number to orders, calls, etc., all con-
fusion was avoided; that plaintiffs had knowledge of the said
confusion and inconvenience and of the pendency of this
action at the time they purchased said hotel."

The trial court seems to have been impressed with the fact
that, at the time respondent named its hotel "St. Francis," it
was not aware of the existence of appellants' hotel St. Fran-
cis; and with the fact that the hotels were of different grades,
in that the Hotel St. Francis operated by appellants was
more of a family hotel and conducted on a small scale and
did not make a specialty of transient trade, while the St.
Francis hotel operated by respondent catered more to tran-
sients and was a larger hotel and conducted on a more elabor-
ate plan; and also with the fact that these appellants pur-
chased knowing of the litigation which it assumed to carry
on.   The court, however, found that the hotel St. Francis
was established about July, 1905, and that the St. Francis
hotel was established about January 1, 1907; and it is con-

ceded that the latter hotel is located about four blocks from the former, in the city of Seattle. The court also found that, after the establishment of respondent's hotel under the name St. Francis, appellants daily received many telephone calls intended for the other hotel; that groceries for one were delivered to the other; that trunks and baggage intended for the guests of one were sent to the other hotel, and upon one occasion a call for a doctor at appellants' hotel became confused and the doctor was delayed thereby. These facts of course show confusion and injury, both to appellants' hotel and to the guests and the public with whom the hotel transacts business.

The question in the case is, shall the respondent under the facts as found by the court be enjoined from using the name St. Francis to designate its hotel. The rule seems to be well established, that "a corporation may be enjoined from using a name or conducting its business under a name so similar to the name of a previously established corporation, association, partnership, or individual, engaged in the same line of business, that confusion or injury results therefrom." Note to *International Silver Co. v. Rogers Corp.*, 66 N. J. Eq. 119, 57 Atl. 1037, reported in 2 Am. & Eng. Ann. Cases, p. 407. That case reviews many authorities upon the questions presented in this case, and many cases are there cited, both in the opinion of that case and in the notes, supporting the rule as above stated.

Respondent seems to rely mainly, as the trial court did, upon the facts that there is a difference in the character of the two hotels, and that there was no fraud or deception practiced or intended by respondent, because at the time the name was chosen it did not know of the appellants' hotel or its name. Respondent also argues that the confusion shown is to the appellants and not to the public, and that confusion to the appellants is not sufficient to warrant a restraining of the use of the name. There is a difference in the character of the two hotels in this, that one is larger than the other, and

is run on a more expensive plan, and caters to transient trade
and charges higher prices; while the other is more of a family
hotel, smaller, and charges lesser rates.   But both take tran-
sient guests and are engaged in the same general business in
the same locality.   They are both hotels, and necessarily in
competition with each other.   The right to adopt a name al-
ready in use does not depend upon the capital invested or
upon the kind of business done.   If the right to adopt a name
already used by a hotel depends upon the size of the building,
or the rates charged, or the number of servants employed or
the capital invested, then, as remarked by the appellants in
their brief, this rule "would permit another company with
more money than the defendant to establish a larger, better,
and more exclusive hotel across the street from the defendant's
hotel under the same name, and its business could be thus
injured or even ruined without redress."   Of course, that is
not the rule.   The general rule is, as before quoted, that one
person may not use the name of another already in the same
line of business so that confusion or injury results therefrom.
There is no doubt that these two hotels are in the same line
of business, and that injury and confusion results to the hotels
and to the public.

It is also argued that the facts do not show any fraud or
deception.   Actual fraud or deception is not necessary in
cases like this.   28 Am. & Eng. Ency. Law (2d ed.), p. 429.
In *International Silver Co. v. Rogers, supra,* the court in dis-
cussing this point uses this language, at page 131:

"That this rule is not confined to copies or imitations of
trade marks, appears from the following cases: *'Chas. S. Hig-
gins Co. v. Higgins Soap Co.,* 144 N. Y. 462; *Wyckoff, Sea-
mans & Benedict v. Howe Scale Co.,* 110 Fed. Rep. 520;
*Hendriks v. Montagu,* 17 Ch. D. 638; *North Cheshire etc.
Brewery Co. v. Manchester Brewery Co.,* L. R. App. Cas. 83
(1899).   In the last case, which is particularly pertinent be-
cause it involved the taking of a corporate name, Lord Hals-
bury thus expressed himself: 'In the result it is perfectly im-
material, to my mind, for the purpose of the decision, whether

they (the company) were fraudulent or not. The question is whether this (that is, the assumption of the name Cheshire and Manchester's Brewery Co.) is an injury to the plaintiff's right. If it is an injury to the plaintiff's right, it is perfectly immaterial whether they intended it or not. The court must restrain them from doing that which is an injury to another person, however inadvertently they may have done it.' "

To the same effect is *Howard v. Henriques*, 3 Sandf. (N. Y. Sup'r Ct.) 725, which is a case of an inferior court, but very much like this case. See, also, *Dodge Stationery Co. v. Dodge*, 145 Cal. 380, 78 Pac. 879; *Van Houten v. Hooten Cocoa & Chocolate Co.*, 130 Fed. 600. And the fact that the appellants bought the hotel St. Francis and its good will pending this case and knew of the litigation can make no difference in the case. Prior damages were waived. Appellants certainly are entitled to what they bought, and are as much entitled to the good name of the hotel as to the lease and the furniture thereof. We are satisfied from the evidence and from the findings of the court that the appellants are entitled to the injunctive relief demanded, and that the court erred in refusing to enjoin the respondent from using the name St. Francis for its hotel.

The judgment of dismissal is therefore reversed, and the lower court is ordered to enter a decree in accordance with this opinion.

HADLEY, C. J., DUNBAR, FULLERTON, RUDKIN, and CROW, JJ., concur.