[No. 28999-3-I.   Division One.   December 7, 1992.]

SEATTLE ENDEAVORS, INC., ET AL, *Appellants,* v. MICHAEL R. MASTRO, ET AL, *Respondents.*

*Raymond H. Siderius* and *Siderius, Lonergan & Crowley,* for appellants.

*John F. Sherwood,* for respondents.

FORREST, J. — Seattle Endeavors, Inc., appeals the trial court's denial of an injunction preventing the defendants from using the name "Willows" in connection with their apartment building. We reverse and remand.

Carrol Duval purchased a 20-unit apartment complex named The Willows Apartments in early 1974. In 1975, Duval formed Seattle Endeavors, Inc.,[1] which has owned and operated The Willows Apartments since then. In February 1988, SEI registered the name The Willows Apartments with the Washington Department of Licensing.

Michael Mastro purchased plans and real estate from The Willows Apartments, a Washington limited partnership, and built a 104-unit apartment complex at 12316-28th Avenue N.E., three blocks from Duval's complex. Mastro advertised the complex as The Willows Apartments and began renting apartment units in 1987. Mastro was unaware of Duval's The Willows Apartments at the time he built, named, and advertised his complex. Mastro sold the complex to Paul and Barbara Stephanus in February 1988, prior to the filing of this suit.[2]

Testimony at trial revealed numerous incidents of public confusion about the two apartment complexes:

— a United Parcel Service parcel intended for Stephanus' Willows Apartments was delivered to Duval's Willows Apartments

— a Coke machine intended for Stephanus' Willows Apartments was delivered to Duval's Willows Apartments

— a glass repairer arrived at Duval's Willows Apartments to make a repair requested by Stephanus

— an applicant for the Stephanus' Willows Apartments manager position went to Duval's Willows Apartments

— apartment hunters responded to Duval's Willows Apartments ads at Stephanus' Willows Apartments

— drapes ordered for Duval's Willows Apartments were delivered to Stephanus' Willows Apartments

---

[1] We will refer to Seattle Endeavors, Inc., and Carrol Duval as SEI for convenience.

[2] For convenience we will refer to Michael Mastro, Paul and Barbara Stephanus simply as Stephanus.

The record shows many other apartment and condominium complexes in the Seattle market which use the name "Willows". In addition, evidence was presented of other examples where more than one apartment building used names that were very similar.

One issue is presented: Did the trial court err in denying SEI's request for an injunction barring Stephanus's use of the name The Willows Apartments for their apartment complex? SEI contends that the trial judge erroneously applied the trade name infringement test to the facts before him. The trial court concluded that because both businesses advertised in the Seattle newspapers and there were other apartment owners using "Willows" in their trade names in the Seattle area, that SEI was not entitled to relief. We disagree.

The test is not whether owners of other apartments in the Seattle area are using "Willows" in their names nor whether SEI and Stephanus advertise in the Seattle newspapers, but whether Stephanus's use of the name for his business in its location engenders confusion. Plainly it does, as the trial court found. Where two businesses use the same name for the same class of business and confusion results, trade name infringement is established. *Martell v. St. Francis Hotel Co.*[3] We find *Martell* dispositive. The facts are strikingly similar to those here present. The plaintiff, Martell, operated a business under the name Hotel St. Francis. Subsequently, the defendant established a hotel four blocks away under the name of the St. Francis Hotel. Confusion ensued both as to prospective customers and businesses servicing the two hotels. It was found that the defendant there, as here, was not guilty of fraud or intentional deception. Nonetheless, the court found Martell, as the first user, entitled to relief and stated the holding as follows:

> that one person may not use the name of another already in the same line of business so that confusion or injury results therefrom. There is no doubt that these two hotels are in the

---

[3] 51 Wash. 375, 98 P. 1116 (1909).

same line of business, and that injury and confusion results to the hotels and to the public.

*Martell v. St. Francis Hotel Co.*, 51 Wash. 375, 380, 98 P. 1116 (1909). There is no significant difference in the two factual situations. Stephanus makes no effort to distinguish the present facts or show any change in the law, indeed surprisingly, he does not even discuss the case.[4]

■ Infringement being established, the remaining issue is as to the scope of the relief. Stephanus suggested to the trial court that he change the name of his business to Willows Court and, in fact, although not ordered to do so, after the conclusion of the trial he did make the change. In essence, this admits that his use of The Willows Apartments constituted an infringement. Clearly, this does not make the case moot as contended by Stephanus, nor are we persuaded that it constitutes the relief to which SEI is entitled. While the change of name might reduce the confusion or, as the trial court found, it might "alleviate . . . any confusion of the public", we see no reason to merely "alleviate" when it is feasible to "eliminate" the confusion and give SEI full relief.

Since Stephanus is not going to move the apartment complex, we need not be concerned with a geographical area of protection. A change of name for some businesses would

---

[4]Although *Martell* is an early case, subsequent cases have not undermined its reasoning nor cast any doubt on its authority. *Bishop v. Hanenburg*, 39 Wn. App. 734, 695 P.2d 607 (1985) recently summarized trade name law and the following quotation is essentially a restatement of the *Martell* holding:

"[1] The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business."

"[2] A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other."

"[3] The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator." *Bishop v. Hanenburg*, 39 Wn. App. 734, 736, 695 P.2d 607 (1985) (quoting *Money Savers Pharmacy, Inc. v. Koffler Stores (Western) Ltd.*, 37 Wn. App. 602, 606-07, 682 P.2d 960 (1984) (quoting *Holmes v. Border Brokerage Co.*, 51 Wn.2d 746, 750-51, 321 P.2d 898 (1958))).

entail some substantial loss of patronage and a court might be required to balance protection to the plaintiff against the damage to a defendant. However, in the case of an apartment building, there is no reason to believe that tenants will leave because of a change of name. Nor is there any reason to believe that a prospective tenant would not respond to an ad for "Magnolia Court" as well as one for "Willow Court", or would not rent an apartment in "Magnolia Court" as readily as one in "Willow Court". While we commend Stephanus for his belated effort to address the problem by changing to Willow Court, we are not persuaded that such action would eliminate confusion nor does it offer a basis to affirm the trial court's decision. Accordingly, we hold that SEI is entitled to an injunction prohibiting Stephanus from using "Willows" in the name or in the operation of his apartment complex.

■ ■ SEI requests attorney fees pursuant to the Consumer Protection Act, RCW 19.86. Trade name infringement is an unfair and deceptive act under RCW 19.86.020[5] thus entitling SEI to attorney fees as a successful plaintiff.[6] Attorney fees are not restricted to consumers' suits; they apply equally to a suit between two business entities.[7] As the prevailing party, SEI is also entitled to its attorney fees on appeal. In the interest of efficiency, we remand to the trial court to establish a reasonable sum as attorney fees for trial and appeal.

The case is remanded for entry of an injunction prohibiting Stephanus from using the word "Willows" in designating

---

[5]"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020; *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 733 P.2d 208 (1987).

[6]"Any person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee[.]" RCW 19.86.090.

[7]*Nordstrom, Inc. v. Tampourlos, supra.*

872

or describing his apartment complex and for the determination of reasonable attorney fees.

GROSSE, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied January 8, 1993.

Review granted at 121 Wn.2d 1015 (1993).